Here is Zee Company v. Williams Mullen, and Mr. Dombroff, when you're ready, we'll hear from you. Good morning, Your Honor. I'm Mark Dombroff. I'm with my colleague Mark McKinnon from McKenna, Long & Aldrich. We represent Zee Company and the individual plaintiff appellants in this matter. We're before the court appealing the trial judge's granting of a summary judgment, and I can best sum up our position by saying that the trial judge was wrong in granting summary judgment. This, I think, is the reverse of the first matter that Your Honor's heard. This is a matter which should have gone to the jury. This is a matter in which the trial judge usurped the responsibilities and the prerogatives of the jury, not unlike the underlying— These were malpractice claims? Yes, Your Honor, it was. This was an action brought by our clients against the Williams Mullen Law Firm in connection with their representation of the clients in an underlying matter in North Carolina. The issue was whether or not a settlement, discussion, proposal, walkaway offer, whatever one wants to call it, was presented by General Electric, which was the plaintiff in the underlying North Carolina action, presented by their counsel to Williams Mullen's attorney partner, William Barrett. And the fact that that proposal, that discussion, that walkaway offer, whatever one wants to call it, I don't suggest—I suggest to you is not relevant, whether or not that was conveyed to the client. There's no dispute that it was not conveyed to the client. The client never knew about it. The terms were quite specific. The discussion took place the day after a temporary restraining order was entered. The General Electric lawyer testified under oath that what she said in response to Mr. Barrett's comment, that we're going to be seeing a lot of one another with multi-track depositions and so forth over the next several days or weeks. The GE lawyer said, well, it doesn't have to be that way. If your client will agree to four specific things—agree to refrain from soliciting customers on the list, a list which, for the very first time, was disclosed as part of the temporary restraining order. I thought that that list of items had been discussed before. Never. Never, Your Honor. Never. And the judge said it was all a bunch of hearsay anyway. Well, the judge— It wasn't admissible. The judge was wrong. There was no admissible evidence that there was such a thing. I will directly respond to that. No, it's what Judge Yellis said. I mean, we've got two judges here, but the court, in granting summary judgment, said that there was no admissible evidence that there was such a thing as a walk-away offer to be conveyed. That's exactly what he said, and what he was— He had to look at it in the light most favorable to you. One, he was wrong. I'll directly respond, and I'll tell you why he was wrong. You're a Virginia lawyer? I am, Your Honor. Now, what they call those things in Virginia, a walk-away offer? I've never heard the phrase walk-away offer. I don't think it's a term of art. Really? I hadn't heard it either. It was the way— It's been kicked around a lot, too. We use it in Maryland all the time. In other words, we both walk away from the case. I think the phrase first was presented in this case by one of the general— That's what—even the language you cite, I don't think that's a walk-away offer. I don't—and frankly, Your Honor, it doesn't matter. I mean, even on its face, it probably doesn't. It doesn't matter. No, but I've never—so, right, maybe in North Carolina, also, they call it a walk-away, but maybe— They may. In West Virginia, we used to call it a dog fall. I'll adopt that, Your Honor. Or the dog fall. We had the same thing. We had a walk-away, but we called it a dog fall. The fact of the matter is, it doesn't matter, and the reason it doesn't matter is the GE lawyer said the following, and there's no dispute, and let me—I'll come back to exactly what Judge Yellis said about the hearsay. The GE lawyer testified under oath, and this was not hearsay. This was misconduct. She said it doesn't have to be that way, talking about we're going to have all these extensive proceedings within a day or two of the temporary restraining order being entered. The reason it doesn't have to be that way is if your clients will agree to withdraw one proposal, a company proposal called DAC, never having been discussed before, ever having been presented, if your clients will agree to the customer list, which was never disclosed before and disclosed for the very first time as part of the temporary restraining order, and the evidence is that at the prior settlement discussions that Z Company had with General Electric, they asked for the customer list, and General Electric refused, through Mr. Schuman, he refused to provide that list. And the testimony— Ms. Cundiff testified that she didn't intend for that statement to be binding on anybody. Doesn't matter what she testified to in that regard, Your Honor, and I'll tell you why. Her testimony took place four years after that telephone discussion. Her testimony took place in the context of this litigation. The law in North Carolina is, is whether Ms. Cundiff intended to be bound by that statement is a fact issue.  Wait a minute, you're using this statement that we could continue discussion, might be able to wrap this up, you're using that as the basis of an offer that should have been conveyed. And then the trial judge, Judge Ellis, said, that's not valid under North Carolina law. And so as I understand your argument, you correct me if I'm wrong— I will. You're making the argument that this is a factual issue, and essentially, it looks like to me, you want to prove your fact by impeaching the witness that made the statement. No, I don't need to impeach the witness who made the statement, Your Honor. If—we have clear testimony from Ms. Cundiff— I'm sorry, it jumped out of my head for a second— from Ms. Cundiff as to what the discussion was. She clearly testified as to the four points— You're talking about something that's not meaningful to the decision. The, the—Judge Ellis decided two things. Mm-hmm. He decided, first, that if that statement was made, Mm-hmm. it was basically meaningless. This is what he said. He said— He does. First, failure to communicate did not deprive Zee of meaningful settlement opportunity. And then he explains why. Mm-hmm. And he goes down and he cites every reason for it. And then he says, second, assuming the statement would have informed— on settlement, the record contains insufficient evidence that settlement would have actually resulted. He does state that. These are the two things. One is that it caused no harm. And the other, it was meaningless in its context. That's what he finds. Yeah. Now, to address what you're talking about doesn't help advance your cause. You have to address the things that he relied on to say that it was not a meaningful statement in the context it was made. And, and he's wrong on both points. And let me take the second point first. That there's no insufficient evidence that it would have been accepted. The fact of the matter is that's just simply not right. He weighed the evidence and he decided it was insufficient. That was not the proper standard on summary judgment. That's the jury's job. And here's the reason. There was unrebutted evidence in the record from the Zee company president and from at least two or, I believe, three of the four individual defendants that had that offer been conveyed to them, they would have accepted it. Now, whether one wants to believe that or not is, is a separate issue. It was for the trier of fact to decide whether that should be accepted. The case... What were the terms of the offer? There are four terms. Thank you for letting me get back to that. One was withdraw a proposal that was made to DAC company. And this was a proposal that GE believed that Zee had made to DAC company. Two, agree to the customer list. The first time, the only time the customer list was presented was as part of the temporary restraining order. But some of the Zee company witnesses testified that they didn't know what the customer list was. They did not, previous to it being attached to the temporary restraining order. And the evidence from the people I've referred to, Mr. Bullard, who was the president of Zee, Mr. Owings and Mr. Lukowski, two of the four, and there are, I think, a third one too, two of the four individual defendants, they testified, unrebutted, that they would have certainly agreed with respect to that customer list, but it had never been presented to them until the temporary restraining order was filed. The third point was that they agreed, or they ceased or desist from switching, engaging in a practice regarding selling one another's clients, which they said they weren't doing anyway, but they would agree to that. And the fourth was to restart the 18-month restrictive covenant, so run it another 18 months from the time the settlement agreement was entered into. Those are four very specific terms. And the unrebutted evidence that was presented in this record is that it would have been agreed to. The unrebutted evidence is that at no time prior to the temporary restraining order was there ever a discussion regarding a DAC proposal, did they ever disclose the customer list, and in fact it was specifically asked for, it was testified to by Mr. Bullard, and it was refused. So the fact is there was a substantial change. Now what Judge Ellis also found was the fact that since GE in November of 2007, remember, Your Honors, this is seven months after the temporary restraining order is entered, it is seven months after Ms. Cundiff testified, and this was not hearsay, and I want to come back to that in a second, this hearsay issue. But it was her testimony as to what that telephone conversation was, is not hearsay. What she, four years later, may testify in these proceedings, she meant the jury should have heard. The jury should have heard and weighed the credibility of it. And weighed... Except the judge said, based on undisputed evidence, that there was no indication that GE would have ever walked away without payment of money, attorney's fees and damages. And the only thing that he relied on, what he relied on was the November 2007 letter, seven months after this telephone conversation took place, where GE wrote a letter, Ms. Butler, one of the GE lawyers, wrote a letter and said they never would have walked away without the payment of, they will not walk away without the payment of money, they will not settle the case without the payment of money. November of 2007 is the first time that's raised. And all one, and this was present before Judge Ellis, in November of 2007, GE had already gone through seven months of costly litigation following the TRO. After the TRO, there were depositions, there were motions, there were proceedings. And seven months later, GE says, we're not going to settle this case without the payment of money. Seven months earlier, the only monies they had expended was to get the TRO. There'd been no depositions, there'd been no discovery, there were virtually no legal fees in the grand scheme of things at that point. But you said a TRO's no legal fees? No, no, no, no, no. I said in the grand scheme of things. What I'm saying is seven months of legal fees, Your Honor, were incurred, and GE, seven months later, says we want money. Judge Ellis pointed to that as being some unstated term that was present in April of 2007. That's not proper. That's a weighing of the evidence. That is not an inference that is in the best, that under the standards should be drawn by the judge. Now, with respect to this issue of hearsay, the issue of hearsay, he never found a hearsay issue with respect to Ms. Cundiff. Never found an issue with respect to Ms. Cundiff. What he found is that the other testimony with respect to Ms. Butler, Mr. Martin, her partner, both GE lawyers, Mr. Ellis, again, one of the other lawyers, Mr. Barks, a lawyer for Z Company, Ms. Adams, a lawyer for Z Company, and Mr. Roundtree, a lawyer for Z Company, the judge found that that would be hearsay. Now, that was all evidence from the GE lawyers stating to the Z lawyers that GE had made a walkaway offer. What Judge Ellis found is all of that evidence was hearsay. Let's assume, and I'm not accepting the fact that it's hearsay by way of is it directly admissible, it would certainly be admissible for the purposes of impeaching any change of position. He found, as I understand it, that he made a distinction between the comment made by the GE attorney and- Ms. Cundiff. Yes, Ms. Cundiff, and the walkaway offer notion. A walkaway offer is an offer where I'll do this, and you'll do this, and we walk away. There are no issues. The statement by Ms. Cundiff said, used the word might, it was basically the key point. It was an opening to the negotiations. These are the main points. Right. This is the way he treated it, and I think fairly so, based on the face of what he said. Now, you couldn't call that a walkaway offer. Right. And so then he takes that, and he says, in the context of things, what was put on the table by Ms. Cundiff was already on the table, and he cites that, and therefore was meaningless, and it was not advanced any further at that point. And second, that's pure speculation as to whether that would have reached or settled. Now, it seems to me, those are pretty good points to make, and I'm sure you're addressing them head on. You seem to be arguing that this statement by Ms. Cundiff is a settlement. No, Judge. It would have been accepted. All they had to do is say yes, but she didn't even say make an offer. She said might. She used the word might, didn't she? She said we might be able to settle it. We might. Under the applicable law in North Carolina, which follows the restatement, unless an offer specifies a specific type of acceptance, nothing will be accepted until it's in writing or reduced to writing by the parties. There need be no specification of what the acceptance is. All Mr. Barrett had to do, if he'd had the authority or if he picked up the phone and called— I don't understand your argument. Yes, Your Honor. Are you arguing that that statement by Ms. Cundiff was a walkaway offer? Because if you are, I think as a matter of law, you don't have any ground to stand on. Well, I don't know what a walkaway offer is, Judge. It's an offer that all you do is we both walk away with no further— That's exactly what she was proposing. If you agree to these four terms— No, she said we might—she was opening negotiations. I don't believe that's correct, Judge. I don't believe she was opening negotiations. And moreover, I think if that's what the argument is, that's an argument that goes to the jury. Judge Ellis—and I see my light is on and I have 26 seconds. Judge Ellis acted as if— You're taking off more than you need to, but that's the argument you want to make. No, I don't want to make it, and I don't want this court to go any further than it has to. The case ought to be reversed, and there ought to be a trial in front of a jury. That's what really ought to happen here. The law is clear that the trial judges are not supposed to weigh the evidence. They're not supposed to make credibility determinations. Whether someone intends to be bound by their statement is a question of fact. There doesn't have to be a specific means of acceptance provided. We're talking about offices of the court here, for God's sakes. Mr. Barrett usurped the prerogatives of his client, and the trial judge usurped the prerogatives of the jury. And the client here— Why don't you continue this on— I'm finished. Thank you, Your Honor. Right. Mr. Bayless? May it please the court, my name is Bill Bayless, and my colleagues Brendan O'Toole and Joe Blackburn. Let me start, Judge, starting with some of the points you made. I want to start with the complaint. Williams-Mullen is faced with a complaint that alleges a walk-away offer was made. We didn't create that allegation. That was an allegation created by Zee. Zee used the term— Let's assume that this cannot be characterized as a walk-away offer. We can come back to that. Let's assume what? I didn't— That the statement is not an offer that could be accepted just by saying yes. Let's assume it was an invitation to engage in settlement at that time, centered around those four points. The argument I believe that your colleague is making is that whether a settlement would occur from that is a fact question, and that the judge's reliance on the notion that money damages had to be included was not indicated at that time when she made the statement. Well, if you read the entire record, instead of just picking five lines out of Ms. Kundiff's statement, you will see, and the record can be found from Ms. Kundiff's statement, joint appendix starts with— I read her testimony, and her testimony is very favorable to you. I mean, there's no question. Well, let me say this. I mean, we never knew Ms. Kundiff. We didn't know what she was going to say. We were faced with an allegation that a walk-away offer was made, and I want to address your question in a second. So when she was deposed, no one had talked to her. We didn't know what she was going to say. She said what she said when she was deposed. The deposition was not just one page. She also said, I never intended it to be a proposal. I never intended it to include all terms. We never would have accepted a settlement proposal that didn't include reimbursement and payment of our attorney's fees, never. The judge took all that into consideration. So to answer your question, assume it's not a walk-away offer, and it isn't a walk-away offer. I think we all know the context, and each of you all have said one way or the other what a walk-away offer is. A walk-away offer is where both sides walk away. I thought it was a dog fall. We can call it the same thing. I mean, you walk away. No one wins. No one wins. You know the old saying about kissing your sister or whatever when you get a verdict. Whatever, every lawyer that has been engaged in litigation and had the context of a walk-away, a dog fall, or whatever, have a general idea of what you mean. And at that point in time, I'm assuming you can make a pretty good case that this was not a walk-away offer or a dog fall or whatever we call it. But it does seem that the conversation was an invitation to continue settlement discussion. And so Judge Ellis says, okay, that's the way I'm going to take it, because as far as the notion that it was a walk-away offer, that was not one. And he says the fact that there may have been an offer was all hearsay. That came through and sets that aside. That's what's alleged in the complaint. But then he says, basically, this statement by Ms. Cundiff was not a meaningful settlement opportunity in the context. And he explains why, because they had discussed those things earlier. The objects of litigation were well known. The undisputed record establishes he was aware of GE's willingness to engage in discussions because concerns would be avoided, that litigation could be avoided. And he keeps citing record citations here that, in the context, this statement didn't advance the ball at all. It was just another invocation of why can't we settle this case. Right. And in the summary judgment context, the plaintiff was charged with the burden to come forward and rebut those. There is no rebuttal to any of that. And you were reading from page 20 of Judge Ellis' opinion. I was. And you ticked off every one he said. And the notes I made, without going to 20 directly, Judge Ellis says this is no more than a repetition of parts of the addendum. It's like somebody files a lawsuit and lists, that's only four of about seven items they list in the addendum, including attorney's fees, et cetera. And somebody says if you want to capitulate, we'll be happy to settle this case. Or at least we might be happy to settle this case. And if you also read these discussions, and Ms. Cundiff says do you want to continue the discussions Jenna Butler had with Z, they were ongoing for six months. This is not something new that was just brought up for the first time. Mr. Bullard had been discussing this proposition of resolving issues if they would capitulate for six months. And Judge Ellis did not ignore that in the record. Whereas they would like you to ignore the fact that those things were in the record. So he ticked those off in order to deal with the issue of okay, it's not a walk away offer. And I don't see how anybody in their right mind can sit here and try to convince the three of you or anyone that those four lines that I could sit here and say I accept and that lawsuit was over. I don't see how he could try to do that. And I don't know if he is or isn't. But what Judge Ellis did, he addressed the second issue, and that is assume it's not a walk away offer. Now he didn't say assume, he concluded it wasn't a walk away offer. Now let's get to the second point in that an invitation to negotiate, is that a basis to state a claim here? And all he did was look at the facts and recited the facts in his opinion. And the invitation to negotiate was what Ms. Cundiff said, we can continue the dialogue that's been ongoing for six months and we might get this case settled. And he wants to take the leap of faith that but for Barrett not picking up the phone five minutes later and say you can't believe what I just heard. She said if we continue this discussion we might settle the case. And now he wants you to speculate that it would have settled. It would have settled. And yeah, those guys from Z did say oh we would have accepted anything they said. And that's a factual issue that he says a jury should have heard. He didn't proffer one statement whatsoever, not one statement from GE that that would have settled the case. So all you have is rote speculation that if he picked up the phone and called Mr. Bullard that all of a sudden Z, despite Cundiff's testimony, that's unrebutted, that said we would, this didn't include everything, we wouldn't have settled the case with a significant monetary payments being all of our attorney's fees, which at that time, and it's in the record, that time was $700,000. And so they want you to Was that at the time Cundiff made the statement? At the time Cundiff made the statement. It had been ongoing for six months. And that's what Judge Ellis had taken into consideration when he said this is nothing new. This is nothing new. So Judge Ellis addressed all of those issues and said A, no walkaway offer was made. B, no offer was made. Forget the word walkaway. And then C. He also, you know, we're talking about attorney malpractice and the question I suspect is if attorneys have been discussing a case for six months and the client's aware of the discussions and participating and they're trying to resolve the case without litigation and then the GE lawyer comes and says after the TRO, if you guys can only address these four items as has been discussed, that's factually what I would have added, as has been discussed over these six months, then we might be able to settle this case. And it's almost a lament. It's almost saying if you guys can just change your minds. And in that regard, if it's taken that way, it seems to me Judge Ellis can be supported by saying it's not very meaningful. And I think he made an effort. In order at least to rise to the level of malpractice, that something had to be disclosed. Well, interestingly enough, I think if you look at what he did, he addressed the complaint. The complaint didn't allege a proposal was made. The complaint was a blanket specific allegation. And we defended the complaint, not the dream that okay, if it's not a walk-away offer, I'll call it something else. I'll call it a proposal. And then all of a sudden I'll get to a jury because it's a proposal because nobody will believe it's a walk-away offer. And Judge Ellis addressed that in his summary judgment paper in his opinion and gave all those reasons on page 20 why it's just speculation and all of this is stale news is all it is. But I want one more point on this and then I'll move on to what wasn't addressed to anticipate something when he stands back up. What Judge Ellis never addressed, and you don't see it in his opinion because he didn't have to address it, the law firm is faced with this issue. They take the deposition, and the deposition is noticed by Zee, of Cundiff, Butler, and there were three of them, Glenn Key. Not a one of them, not a one of them, they're the ones that were allegedly made the walk-away offer where you get around the hearsay objection that they had. And every one of them said we never made a walk-away offer, we never made any offer of any sort. And that is unrebutted except by hearsay that somebody said that they said it. Well, they talked to them. So what did they do? At that point, they amend their complaint and they keep the same allegations in the complaint against Williams Mullin, move to amend and add a second count, and they allege specifically that GE fabricated this story of a walk-away offer, whispered in their ear that it had been made in order to induce them to dismiss, I mean to terminate Williams Mullin for some ulterior motive, and that GE was responsible for all of the damages that occurred. They chose to do that. You know, but that's, I understand the argument. In other words, on the one hand they say an offer was made, on the other hand they say an offer was not made and it was fabricated. And you say they're inconsistent. But, you know, you're allowed to plead totally inconsistent. You have to make an election before you get to trial on something. But at this point, I'm not sure you get a lot of mileage from that. That's a pretty good point. Well, let me get a little mileage and just try to address the question. Because what you have, and in 39 1⁄2 years I've never seen it, and I've done it a long time, I understand you can plead alternative theories. But a good example of an alternative theory is you plead breach of contract or in the alternative you plead quantum merit, all based on the same factual allegation. Here you had alternate allegations of fact and alternate. Well, a better example where there's a direct conflict is you, in a broad case, you plead that the contract has to be rescinded. It's a null and void. And in the second count, you affirm the contract and seek damages. And in most state courts they say you can plead those alternatively, but at some point you have to make an election before you go to trial. Here he's pleading that an offer was made. And then he's saying, well, if an offer wasn't made, GE fabricated that issue and tried to spread the rumor and created a fraud in order to manipulate you into other contracts. Well, I understand. I don't think he did that. He didn't say, and if an offer wasn't made. If you read his pleading, he says an offer was not made. Not if an offer was not made. So you want us to take that as a judicial admission? Well, we never got to argue that. You still got count one. What are you going to do with that? Count one being? On the amended complaint. He added that fraud count, right? Yes, sir. But he retained the other count. So in the one count, he alleges the offer was made. He kept that in there. In the second count, he says it wasn't made. It was not made. And I simply raise it. It meant a lot to me when I read it, and if it doesn't mean a lot to you, I wanted to point it out because I had never seen it before, and it's not the typical alternative pleading. No, it's not typical. All right. I would, instead of ignoring the second issue, I do want to get to the issue. You mean the trial on your feet? Yes, sir. Just to make a couple of points. The judge, Judge Ellis, in his opinion, dismissed the summary judgment. This was Judge Tringa's trial, right? Judge Tringa tried the case, correct. Judge Ellis then was out of the case, and it went to Judge Tringa. Now, remember. But not enough of the two of you. I guess. And so had I. He wasn't the only one. But if you look at the complaint, they asked for a jury. If you look at the counterclaim, we didn't ask for a jury. If you look at the answer to the counterclaim, they asked for a jury. They got a jury, and they got a jury verdict. They got a jury verdict that, to the penny, gave every cent that was asked for, plus two years of prejudgment interest. And I submit to you, one of the reasons may well have been, and I'll get to it in a second, when Mr. Bullard sat there and said, I didn't even look at these bills until two weeks ago. Unequivocal testimony that he didn't care enough about looking at the bills until two weeks before trial, where the bills had been billed three or four years earlier. But you have a heightened duty here to overturn the jury verdict. Judge Ellis eliminates any claim for malpractice and breaches the standard of care. Judge Tringa then rules as a matter of law, this is going to a jury, and the issue is going to be Williams-Mullen is entitled to recover its fees charged up to the date of discharge that are reasonable. And then cite... Partial summary judgment on... Basically the way I... The question could be how much. Right. And it could have been nothing. I mean, he didn't make a rule that it's got to be some number. And he clearly said, he didn't use the word it could have been nothing, that's me talking, but his order says that you have to apply the eight factors under Rule 1.5 of the North Carolina Rules of Professional Conduct to determine what is reasonable. He then gave an instruction, and his instruction is in the Joint Appendix 4265-67, and I just want to go to the very end of that, because he lists in his instruction, and they argue that's one of the grounds for relief they seek on that. But he at the end says, for these reasons, and he listed all the eight elements, you are instructed that while you may consider all the evidence in connection with determining how much he owes Williams Mullen, it's based on the factors set forth in 1.5. He... Before that trial started, we wanted and asked, and the record will reflect this, Judge Tringa to allow us to say that summary judgment had been entered to eliminate malpractice. So they wanted to retry the malpractice case again, and that's how they raised these issues on appeal. Judge Tringa said, I'm not going to let you do that now. I'm not going to let you make any statements about it. I'll make that ruling and see what Z does. Well, Z was warned, forewarned, and yet went into all that again, and that's why they were instructed as they were instructed, and that's why the jury was instructed that the malpractice case had been entered in summary judgment. So the instruction that he gave was a proper, broad instruction that allowed them to consider everything but in the context of what is reasonable. So what did Z do to challenge reasonableness? Nothing. Not one thing. They hired two experts, one, Burks, who was excluded by Judge Tringa before the trial started, and he was excluded because he was a standard of care expert, who was asked to assume that a walk-away offer had been made by Ms. Cundiff, and so his entire testimony was based on a flawed assumption, never identified to testify regarding reasonableness of fees, and he was not allowed to testify. Judge Tringa had a very lengthy, probably two-hour hearing on Mr. Page, and Mr. Page testified, if you look at his testimony, first of all, he delegated every, Mr. Page was a guy who runs a business, who makes it a practice of beating lawyers down on their bills for insurance companies, and he does it based on guidelines that insurance companies give lawyers to bill their files, and if you don't comply with the guidelines, then you're not entitled to be paid. This is a 10-year attorney-client relationship where Mr. Barrett had billed Z or related companies for all kinds of work, formatting had never been challenged by anyone that was there. There was a trust between the parties. That trust ended, unfortunately, for everyone, I think, but that trust ended, but never was it ever questioned. So here comes Mr. Page. He delegates to a law student the bills and says, look at them and see which ones you can bring into block billing, vague billing, and things like that, and just arbitrarily concludes after a certain test that he does that 75% of the bills aren't properly formatted and never once looks at or addresses the jury instruction or the law of the case, which was reasonableness, never once addresses that at all. So he was excluded, although the judge gave them ample opportunity to test to see if his testimony would be relevant. The judge determined it would bring nothing to this case, and therefore he was excluded. That's all I have. I'm out of time unless you have any questions. Mr. Dombrow. Thank you, Your Honor. I'm not going to address the alternative pleading issue. It was never decided by the court below. It's not properly before this court, and even if it were properly before this court, it's alternative pleading. GE, by the way, got out not because they were right that an offer was or wasn't made, but the court decided that whatever communications took place were litigatively privileged, and so they dismissed count two against GE based upon privilege issues having nothing to do with the substance. But I'm not going to address it. Second of all, with respect to the question I think Judge Agee, you raised regarding the $700,000 in fees. It was $700,000 in fees in November of 2007, seven months after the temporary restraining order was entered. And it wasn't $700,000 in fees when Ms. Cundiff had the telephone call. And what did she say? What was her testimony? There was some talk by counsel about what her testimony was. Her testimony was, and I said, well, we could continue the discussions that you and Jenna have started if the defendants were prepared to cease switching of accounts, were prepared to withdraw the DAC proposal, were prepared to agree on the customers subject to the agreements, and were prepared to agree to a restart of the time period of the restrictive covenant, we might be able to wrap things up. Now, we can argue all day long, and the fact that we're going to argue all day long, or we could argue all day long as to whether that's an offer to settle or not, and whether or not if Mr. Barrett had simply said, fine, agreed, we're done, that would have ended the case. That's a jury issue. That is a prototypical, dyed-in-the-wool, traditional jury issue. And there's no discussion of money. There was never a discussion of money until November 2007 when $700,000 of legal fees had been incurred. How long had she been discussing this case and settlement before the TRO? There never had been discussions with her, ever. I'm talking with GE. The only discussion that took place with the Z company was between Mr. Schumann, who was a manager at GE, and Mr. Bullard. Mr. Bullard, in the early stages of this case, before the temporary restraining order action was filed, journeyed to ______. There was one meeting. There was one meeting, and at that meeting, Mr. Schumann, and he testified to this, at that meeting, Mr. Schumann said, I want you guys not to solicit any of our customers. And Mr. Bullard said, none of this is contested. This is all on the record. Mr. Bullard said, well, which customers are you talking about? And Mr. Schumann wouldn't give him the list. And he never gave him the list after that. The first time the list was ever presented was when the temporary restraining order got entered. So Judge Ellis's conclusions, and you're absolutely correct, Judge Niemeyer, that Judge Ellis lists all these things with respect to his conclusion. He's wrong. There were substantial changes between the time Mr. Schumann and Mr. Bullard met and when Ms. Cundiff got on the phone and said it doesn't have to be that way. What is she saying it doesn't have to be that way in connection with? Mr. Barrett says we're going to spend a great deal of time together over the next few days. We're going to be doing this expedited discovery. There are going to be multi-track depositions. We're going to be seeing a lot of each other over the next few days. And it turned out to be the next seven months, $700,000 in legal fees later. And this conversation. What were the level of attorney's fees through the TRO? I want to suggest they were $100,000 or less. But the evidence, the evidence that is again unrebutted on the record is that Mr. Bullard, had he been told that there was a monetary amount associated with the legal fees even in April of 2007, he would have paid it. Just as a footnote, why would he have paid it? He now has, and it's on appeal in the North Carolina court, a $10 million verdict against him. Over $5 million of that is legal fees for General Electric. Now I ask you rhetorically, Your Honor, rhetorically, please don't anybody take this the wrong way. If you are a small business and you have General Electric suing you, and General Electric comes and says if you'll agree to these four terms, we might be able to wrap things up. No money, nothing. Are you honestly going to fight them? Don't you feel that your attorney owes you the obligation to say, we might be able to wrap these things up, Bob Bullard, if you'll agree to these four things? What is the court referring to? The undisputed record of evidence establishes that Z was aware of G.E. Betz's willingness to engage in discussions with Z about Betz's concerns so that the lawsuit could be avoided, and that G.E. Betz actually had these discussions with Z. That's correct, and it's Mr. Schuman's discussions. Absolutely. It was Mr. Schuman's discussions. And, Your Honors, there is no other evidence. Those terms were discussed. No. No. Those terms were not discussed. What was discussed was we want you to stop soliciting our clients, said G.E., Mr. Schuman. And he's not a lawyer. This is a business person. These were business person-to-business person discussions. And Mr. Bullard said, okay, what customers or clients are you talking about? And he said, we're not giving you the list. We're not telling you because that's confidential information. And, in fact, the undisputed. No, I'm not talking about the list. I'm talking about the four items. Never discussed. Never discussed. Never discussed. Wasn't that part of their lawsuit? No. These four items were not. They wanted them to cease switching. They got the temporary restraining order directing that the individuals not contact the people on the list. But there was never relief sought regarding a DAC proposal. Judge Ellis was wrong when he said the undisputed record evidence establishes that Z was aware in or before April 2007. Yes. That Cundiff's four enumerated demands were, among others, G.E. Betz's objects of litigation in the North Carolina action. Well, let me suggest that one, as a personal observation. And he directs the documents and he directs to the ad damnum in the North Carolina action and a letter from Cundiff Disease Council and Bullard deposition. Those are all supporting. Yes, they don't support it, Judge. They don't. They're not there. We'll take that. I know you will. Those four points are not there. Okay. And let me just submit that it is not at all unusual, and I know my red light is on, it is not at all unusual, as your honors know, that no matter what an ad damnum may demand, that parties settle for all sorts of things once they get into the litigation. And that is exactly what occurred here. G.E. had what they wanted. They had the temporary restraining order. Thank you. All right. Thank you. We'll adjourn court for the day and then come down and greet counsel. This honorable court abstains adjourned until tomorrow morning at 930. God save the United States of this honorable court.
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee